COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-283-CV

 

RALPH
O. DOUGLAS                                                            APPELLANT

 

 

                                                                                                        

 

                                                   V.

 

ANSON
FINANCIAL, INC.,                                                      APPELLEES

DON BONNER, AND 

MIKE
FERGUSON                                                                                 

                                              ------------

 

            FROM THE 352ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant Ralph O. Douglas, an inmate proceeding
pro se, sued Appellees Anson Financial, Inc., (Anson) Don Bonner, and Mike
Ferguson, alleging a cause of action for their failure to produce his financial
records upon his request.  The trial
court denied Douglas=s motion for summary judgment
and granted Appellees= motion for summary
judgment.  We affirm the trial court=s
judgment.

I.  Factual
and Procedural Background

On July 24, 1997, Douglas entered into an oral
agreement with Vernon and Clara King for the Kings to deed their home to
Douglas.  Anson held a lien on the home
and was allegedly in the process of foreclosing upon it.  Ferguson was and is the president of Anson,
and Bonner was an employee of Anson at the time the events forming the basis of
this suit occurred.  On that same date,
Bonner faxed Douglas a letter informing him of the amount necessary to pay off
the Kings= lien.

Two days later, the Kings signed a handwritten
contract purporting to deed their home to Douglas.  The contract provided that Douglas would pay
off the lien, and then the Kings would repay Douglas.  When the Kings had repaid Douglas in full, he
would deed the home back to them for $10.00.

On July 29, 1997, Bonner faxed Douglas an AExtension
of Lien@
contract for the Kings to reinstate their loan, apparently for Douglas to get
the Kings to sign.  The same day, the Kings
signed the contract to reinstate their loanCand
therefore prevent foreclosureCand
Douglas remitted this contract to Appellees. 
The Kings also gave Appellees written permission to discuss and disclose
their loan information with Douglas.








On September 30, 1997, Douglas allegedly Amade a
mortgage on the Kings[=] home with their home as collateral.@  On the same day or the following day, Douglas
paid to Appellees the balance in full that the Kings owed, and Appellees cashed
Douglas=s
check.  On October 13, 1997, Appellees
conducted a credit check on Douglas, and on October 28, 1997, Ferguson, on
behalf of Anson, signed a release of lien on the Kings=
property.








Douglas alleged that the Kings complained Ato the
Harris County District Attorney=s
Office[,] asserting that [he] defrauded them of their home.@  On June 8, 1999, a grand jury indicted
Douglas for theft of real estate (the Kings=
home).  To prove his alleged innocence,
he claimed that he immediately contacted Appellees and requested his mortgage
records from them, but Appellees did not produce them.  He claimed that the Kings committed perjury
during the trial regarding the transaction. 
He was convicted of the offense and 
was thereafter incarcerated.  On
June 29, 2000, Douglas sent a notarized subpoena request to Appellees for his
mortgage records.  On March 28, 2002,
Douglas served the Harris County District Clerk and Appellees with a Anotice@ to
compel production of documents from Appellees, stating that a request for a
subpoena to compel production would follow. 
On April 19, 2002, Douglas requested the clerk to issue a subpoena duces
tecum on Appellees.  Douglas alleges that
Appellees did not produce the records he requested to him but served the Harris
County District Attorney=s Office with copies.

On May 14, 2003, Douglas filed a lawsuit against
Appellees for their failure to produce his records.  He filed an affidavit stating that he had
requested his records from Appellees on several occasions and that Appellees
had violated federal and state laws by refusing to produce his records.  Among other relief, he requested compensatory
damages of $10 million and punitive damages of $250,000.

On July 10, 2003, Douglas served Appellees and
the trial court with an Aopen records request.@  On August 13, 2003, he filed a motion to
compel Appellees to respond to his discovery requests.  The trial court did not rule on the
motion.  On August 21, 2003, he filed a
motion to compel Appellees to answer his open records request, on which the
trial court also did not rule.  On
December 5, 2003, Douglas requested the Tarrant County District Clerk to issue
a subpoena duces tecum, which the clerk issued the following February after
Douglas provided the date, time, and address to appear.  He alleges that Appellees did not respond to
these requests either.








On January 4, 2005, Douglas filed a motion for
summary judgment against Appellees based on their failure to produce his
financial records to him, alleging that he had a cause of action under various
provisions of Title 12 of the United States Code.[2]  Appellees responded that Douglas failed to
state any recognizable cause of action, he failed to address any of their
affirmative defenses in his motion, he failed to attach exhibits listed in his
motion, and his affidavits were defective. 
In addition, Ferguson=s
affidavit, attached to Appellees=
response, states that Anson did not have any mortgage records for Douglas and
that Anson had already sent Douglas copies of all mortgage documents that it
had with the Kings.

On January 31, 2005, Appellees filed a
traditional motion for summary judgment. 
They argued that Douglas failed to state a viable cause of action.  In addition, they alleged that because there
was no written agreement between themselves and Douglas, the statute of frauds
barred any possible contractual claim by Douglas.  Also, they alleged that Douglas=s claims
were barred by the applicable statute of limitations, listing several possibly
relevant statutes of limitations, depending on how his claims were
construed.  Ferguson=s
affidavit, attached to the motion, states that Anson never entered into any
mortgage, contract, or written agreement with Douglas.  It also states that Bonner was not authorized
to enter into a mortgage agreement or any other written agreement with Douglas.








On the same day, Appellees also filed a
no-evidence motion for summary judgment, claiming that there was no evidence of
sixteen different items.  Specifically,
they alleged that there was no evidence that they were obligated by any law or
contract to produce any records or that they had violated any law or
contractual obligation.

On February 1, 2005, Appellees filed a first
amended answer.  In their answer,
Appellees asserted that Douglas had failed to state a claim, and, even if he
had stated a claim, it was barred by the statute of limitations and the statute
of frauds.  They asserted that he did not
have the capacity to sue because he was not a party to the deed of trust, that
any alleged oral agreement is not supported by consideration or that such
consideration failed, that he was estopped from asserting claims against them,
and that he was a vexatious litigant.  On
February 25, 2005, Douglas filed a memorandum, which rebutted Appellees=
assertions.  On May 9, 2005, Douglas
filed an Aamended motion for summary
judgment to [Appellees=] response to [his] original
motion for summary judgment,@ which
also rebutted Appellees= assertions.








On June 20, 2005, the trial court signed an order
granting Appellees= motions for summary judgment on
both traditional and no-evidence grounds and denying Douglas=s motion
and amended motion for summary judgment, dismissing Douglas=s case
with prejudice.  On July 20, 2005,
Douglas filed objections to thirty-eight different matters.  He did not file a motion that would extend
the trial court=s plenary power.

On appeal, Douglas presents eighty issues.  In his summary of his argument, he alleges,
among other things, that the trial court abused its discretion by granting
Appellees= motions for summary judgment,
that Appellees did not present any evidence entitling them to summary judgment,
and that the trial court did not consider any of his evidence presented in his
amended motion for summary judgment or his responses and objections.  All of the issues focus on the propriety of
the summary judgment.

II. 
Standard of Review

In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.[3]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[4]








When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.[5]  Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.[6]

The summary judgment will be affirmed only if the
record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.[7]








A defendant who conclusively negates at least one
essential element of a cause of action is entitled to summary judgment on that
claim.[8]  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.[9]  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.[10]  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.[11]

When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.[12]  The reviewing court should render the
judgment that the trial court should have rendered.[13]








In addition, after an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim
or defense.[14]  The motion must specifically state the
elements for which there is no evidence.[15]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[16]  We review the evidence in the light most
favorable to the party against whom the no-evidence summary judgment was
rendered.[17]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no-evidence summary judgment is not proper.[18]

When a party moves for summary judgment under
both rules 166a(c) and 166a(i), we will first review the trial court=s
judgment under the standards of rule 166a(i).[19]  If the appellant failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether appellee=s summary judgment proof
satisfied the less stringent rule 166a(c) burden.[20]

III.  Legal
Analysis








Appellees allege in their no-evidence motion for
summary judgment that there is no evidence that they were obligated by any law
or contract to produce any records or that they had violated any law or
contractual obligation.  We agree.

A.  Title
12 Violations

In his motion for summary judgment, Douglas
argues that his cause of action arises under Sections 2802(1), (4), 3404(a)(5),
and 6827(1)-(4) of the United States Code Title 12, entitled ABanks
and Banking.@[21]








We could not locate Title 12, Section 6827.  However, Douglas may have intended to refer
to Title 15, Section 6827.[22]  This section provides definitions for a
subchapter of Chapter 94, entitled AFraudulent
Access to Financial Information.@[23]  This subchapter prohibits obtaining customer
information by false pretenses.[24]  Even if he intended to refer to this
subsection, Douglas=s attempted cause of action is
still unclear to us.  Even if he could be
considered Anson=s Acustomer,@[25] Douglas
has not alleged that anyone obtained his information by false pretenses.  Moreover, compliance with this subchapter is
enforced by the Federal Trade Commission and other agencies,[26]
not a private litigant like Douglas.

Section 3404(a)(5) governs the contents of
statements furnished by customers to financial institutions and government
authorities and provides:

A customer may authorize
disclosure under section 3402(1) of this title if he furnishes to the financial
institution and to the Government authority seeking to obtain such disclosure a
signed and dated statement which . . . states the customer=s rights under this
chapter.[27]

 








By referring to Section 3404, Douglas is apparently attempting to
bring a cause of action under Chapter 35 of Title 12, entitled ARight to
Financial Privacy.@ 
This chapter governs access to financial records, such as through a
subpoena process, customer authorization, and formal request.[28]  Even if Douglas could be considered Anson=s
customer, Chapter 35 provides such access by AGovernment
authorit[ies],@ which are defined as agencies
or departments of the United States or their officers, employees, or agents.[29]  Douglas is not a government authority.  Also, Section 3404(a)(5) simply provides for permissive
disclosure by customers.[30]  In addition, Section 3416 of Chapter 35
explicitly provides that A[a]n action to enforce any
provision of this chapter may be brought in any appropriate United States
district court.@[31]  Appellees argue in their brief that Douglas
was required to bring any possible cause of action under Title 12 in federal
court.  It does not appear from the
appellate record that Appellees raised this argument at the trial court
level.  However, questions of subject
matter jurisdiction cannot be waived and may be raised for the first time on
appeal.[32]  If Douglas intended to bring a cause of
action under Chapter 35 of Title 12, he should have done so in a federal court,
not a state court, and this court has no jurisdiction to hear his appeal on that
issue.[33]













Subsections (1) and (4) of Section 2802 provide
definitions for Amortgage loan@ and @other
lending institutions.@[34]  By referring to these provisions, it is
possible that Douglas is attempting to bring a cause of action under other
provisions of this chapter, Chapter 29, entitled  AHome
Mortgage Disclosure.@[35]  Section 2803 of this chapter provides that
certain depository institutions Ashall
compile and make available . . . to the public for inspection and copying at
the home office . . . the number and total dollar amount of mortgage loans
which were (A) originated . . . or (B) purchased by that institution.@[36]  This information is to be itemized to show
the number and dollar amount for each item.[37]  The statute also provides that Aany
depository institution which is required to make disclosures under this section
shall make available to the public, upon request, loan application register
information (as defined by the Board by regulation).@[38]  The statute provides time periods for which
the institutions are to maintain the records and make the disclosures.[39]  However, enforcement of Chapter 29's
provisions is governed by Section 2804, which provides that compliance shall be
enforced, depending on the type of financial institution at issue, by the
Office of the Comptroller of the Currency, by the Board, by the Board of
Directors of the Federal Deposit Insurance Corporation, by the Director of the
Office of Thrift Supervision, by the Administrator of the National Credit Union
Administration, or by the Secretary of Housing and Urban Development.[40]  Therefore, Douglas has not presented any
evidence that he is a party who can enforce provisions of Chapter 29 in a
private cause of action.

Therefore, even though Douglas asserts that
Appellees are in violation of  Title 12,
there is no evidence that they were obligated by Title 12 to produce any
records or that they had violated Title 12 by not doing so, and Douglas has not
shown that he is a party entitled to enforce these provisions.

B.  Written
Discovery Violation








Appellees suggest that by bringing his suit,
Douglas was attempting to conduct written discovery of Appellees in connection
with his criminal trial. Douglas=s notice
to compel production of documents and his subsequent request for the clerk to
issue a subpoena duces tecum referenced Texas Rules of Civil Procedure 205.1,
205.2, and 205.3.[41]  These rules provide a process for civil
litigants to subpoena non-parties and compel production of documents.[42]  However, the case for which Douglas appears
to be requesting discoveryCtheft of
real estateCis a criminal case[43]
as opposed to a civil case.  Regardless,
even if the discovery requests had been proper under either the Texas Rules of
Civil Procedure or the Texas Code of Criminal Procedure, any failure to comply
with discovery requests does not give rise to a private cause of action.  Rather, under the rules of civil procedure,
the court may treat such failure as contempt of court, and under the
Code of Criminal Procedure, the court may fine a disobedient subpoenaed
witness.[44]  Therefore, there is no evidence that
Appellees violated any law requiring them to produce the documents.  In addition, even if Appellees were required
to produce the documents, Douglas has not shown that he has an independent
cause of action to enforce the discovery provisions.

C.  Gross
Negligence 








Douglas also appears to be alleging on appeal
that his argument included a basis for finding that Appellees were grossly
negligent.  Gross negligence contains two
elements:  (1) from the actor's
standpoint, the act or omission complained of must involve an extreme degree of
risk, considering the probability and magnitude of the potential harm to others,
and (2) the actor must have actual subjective awareness of the risk involved
but nevertheless proceed in conscious indifference of the rights and safety or
welfare of others.[45]   However, in his motion for summary judgment,
Douglas only argued that Appellees Ahave a
duty to produce [his] records upon request;@ he did
not allege that they had been grossly negligent.  Even on appeal, he does not provide a basis
for his claim and only alleges that Appellees caused him to lose a substantial
amount of money.  Therefore, we agree
with Appellees that there is no evidence that they were grossly negligent or
that they have engaged in any act or omission in breach of any duty, law, or
contract that involves a high degree of risk of which they had subjective
awareness.

                                     D.  Breach of Contract








Douglas also may be alleging that Appellees
breached a contract or agreement. 
However, even if this is his allegation, all contracts in this case were
between Douglas and the Kings and between the Kings and Appellees.  Douglas alleged in his petition that he Amade a
mortgage on the Kings[>] home with their home as
collateral.@ 
We are unclear what he meant by this statement, and there is no evidence
in the record of any such mortgage agreement. 
In addition, it is unclear if he is simply referring to having acted on
behalf of the Kings because he had reinstated their loan on their behalf.  Also, Douglas appears to be alleging on
appeal that Appellees ratified the contract between the Kings and him.  However, we agree with Appellees that there
is no evidence that Douglas entered into any agreement with Appellees, that
Appellees were required by any contract to produce records to Douglas, or that
Appellees breached any contract with Douglas or to which Douglas had a right to
demand action on from Appellees.

E.  Open
Records Request








In his original petition, Douglas stated that
Appellees are in violation of the AOpen
Records Act/Freedom of Information Act.@  He refers several times in summary judgment
documents to his requests to Appellees as Aopen
records request[s].@ 
The Texas Public Information Act was formerly known as the Texas Open
Records Act.[46]  Therefore, by stating AOpen
Records Act,@ Douglas was likely referring to
the Texas Public Information Act.[47]  This Act provides for certain disclosure of Apublic
information,@ which is defined as information
that is collected, assembled, or maintained 1) by a governmental body or 2) for
a governmental body, and the governmental body owns the information or has a
right of access to it.[48]  However, even if Appellees were a
governmental bodyCwhich Douglas has not allegedCgovernmental
bodies are Anot required to accept or comply
with a request for information from . . . an individual who is imprisoned or
confined in a correctional facility.@[49]  Therefore, Douglas=s
labeling his request as an Aopen
records request@ does not change the result, as
there is no evidence that Appellees violatedCor were
even parties who could have violatedCthe
Texas Public Information Act.








As stated, Douglas also alleged in his original
petition that Appellees violated the Federal Freedom of Information Act.  Section 552 of Title 5 of the
Unites States Code provides that A[e]ach
agency . . . shall make available for public inspection and copying@ certain
records.[50]  AAgency@ is
defined as Aeach authority of the Government
of the United States, whether or not it is within or subject to review by
another agency.@[51]  It Aincludes
any executive department, military department, Government corporation,
Government controlled corporation, or other establishment in the executive
branch of the Government (including the Executive Office of the President), or
any independent regulatory agency.@[52]

On complaint, the
district court of the United States in the district in which the complainant
resides, or has his principal place of business, or in which the agency records
are situated, or in the District of Columbia, has jurisdiction to enjoin the agency
from withholding agency records and to order the production of any agency
records improperly withheld from the complainant.[53]

 

It does not appear, and Douglas has not alleged, that Appellees are an
agency within the meaning of the statute. 
In addition, Section 552 specifically confers jurisdiction on United
States courts, not state courts.

Section 552a of the same title provides that

[e]ach agency that
maintains a system of records shall . . . upon request by any individual to
gain access to his record or to any information pertaining to him which is
contained in the system, permit him . . . to review the record and have a copy
made of all or any portion thereof in a form comprehensible to him.[54]

 








If the agency fails to do so, Athe
individual may bring a civil action against the agency, and the district courts
of the United States shall have jurisdiction in the matters under the
provisions of this subsection.@[55]  Again, it does not appear, and Douglas does
not allege, that Appellees are an agency within the meaning of the
statute.  Also, Section 552a specifically
confers jurisdiction on United States courts. 
Therefore, even if we were to construe Douglas=s
summary judgment documents as asserting a cause of action under the Federal
Public Information Act, Appellees had no obligation under the Act to produce
his records to him.

F.  Fraud

In their no-evidence motion for summary judgment,
Appellees stated that A[t]here is no evidence that
[they] have engaged in fraud of [Douglas].@  Also, in their traditional motion for summary
judgment, they allege that Apotentially
applicable@ statutes of limitations have
passed for all possible claims that Douglas alleged, listing fraud as one of
the eight possibilities.  In his
appellate brief, Douglas contends that Appellees=
no-evidence motion is Alegally and factually
insufficient in respect to [their] assertion [that they] have [not] engaged in
fraud of [him].=@








To prevail on a claim of fraud, Douglas must
prove that (1) Appellees made a material representation that was false, (2)
they knew the representation was false or made it recklessly as a positive
assertion without any knowledge of its truth, (3) they intended to induce
Douglas to act upon the representation, and (4) Douglas actually and justifiably
relied upon the representation and thereby suffered injury.[56]  Appellees=
no-evidence motion only asserts that there is Ano
evidence that [they] have engaged in fraud of [Douglas]@ and
does not specifically state the element or elements of fraud for which there is
no evidence.  








However, Douglas does not appear to have raised a
cause of action for fraud, and, on appeal, he makes no reference to fraud until
his statement of an issue.  He never
alleged that Appellees made a material misrepresentation that was false or that
any of the other elements were met.  In
his Aamended
motion for summary judgment to [their] response to [his] original motion for
summary judgment,@ he simply stated that he had
refuted every ground alleged in their no-evidence motion.  He also argued that he had not
committed any fraudulent or criminal acts, but he does not allege that
Appellees did so.  It appears that
Appellees were simply covering all possible grounds in their no-evidence motion
because they were unable to discern what cause of action Douglas was
alleging.  Thus, because the absence of
fraud does not appear to have been a basis for the trial court=s
decision, the trial court could not have abused its discretion on this basis.

 

G. 
Ferguson=s Affidavit

Douglas alleges that Ferguson=s
affidavit attached to Appellees=
traditional motion for summary judgment is conclusory and therefore
inadmissible.  We disagree.  AA
conclusory statement is one that does not provide the underlying facts to
support the conclusion.@[57]  Ferguson=s
affidavit does not make conclusions of law, but merely recites relevant facts
within his knowledge, such as that he is the president of Anson, that he is the
only person with authority to enter mortgage agreements on behalf of Anson,
that Bonner was an employee of Anson, and other statements.








In addition, Douglas=s Aamended
motion for summary judgment to [Appellees=]
response to [his] original motion for summary judgment@ alleges
that his AExhibit V@ refutes
Ferguson=s
affidavit because it shows that Ferguson released the lien on the Kings=
property.  However, this exhibit is
simply the release of lien signed by Ferguson and does not appear to refute any
assertions in Ferguson=s affidavit describing who did
or did not have authority to enter into mortgage agreements.

 

H. 
Vexatious Litigant

In Appellees= first
amended answer, they allege that Douglas is a vexatious litigant.  Douglas complains about this statement on
appeal. This assertion was not included in any of the motions for summary
judgment.  Therefore, it could not have
been a basis for the trial court=s ruling
because summary judgment cannot be granted except on the grounds expressly
presented in the motion.[58]  Consequently, we do not address it.[59]

 

 

 

 

 

 

 








 

 

IV. 
Conclusion

Douglas has presented no evidence that Appellees
violated any law or contractual obligation by allegedly failing to produce his
financial records to him.  In addition,
because Douglas failed to state a cause of action, he did not prove as a matter
of law all elements of any cause of action, and the trial court did not abuse
its discretion by denying his motion for summary judgment and granting
Appellees= motion for summary
judgment.  Because we have upheld the
summary judgment, we do not reach any remaining issues.[60]  We affirm the judgment of the trial court.

 

 

PER CURIAM

PANEL F:    DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  March 30, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]See 12
U.S.C.A. '' 2802(1), (4), 3404(a)(5) (West 2001).





[3]Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).





[4]Sw. Elec. Power Co., 73 S.W.3d at 215.





[5]Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).





[6]Great Am. Reserve Ins. Co. v. San Antonio Plumbing
Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).





[7]Clear Creek Basin, 589 S.W.2d at 678.





[8]IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v.
Mason, 143 S.W.3d 794, 798 (Tex.
2004).





[9]Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).





[10]Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).





[11]Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).





[12]FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).





[13]Id.





[14]Tex.
R. Civ. P.
166a(i).





[15]Id.; Johnson v. Brewer
& Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).





[16]See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co.,
73 S.W.3d at 215.





[17]King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004); Johnson,
73 S.W.3d at 197; Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000).





[18]Moore v. K Mart Corp., 981 S.W.2d 266, 269
(Tex. App.CSan Antonio 1998, pet.
denied).





[19]Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).





[20]Id.





[21]See 12
U.S.C.A. '' 2802(1), (4), 3404(a)(5).





[22]15 U.S.C.A. ' 6827 (West 2005).





[23]Id.





[24]Id. ' 6821 (West
2005).





[25]Id. '
6827(1).





[26]Id. ' 6822 (West 2005).





[27]12 U.S.C.A. ' 3404(a)(5).





[28]See id. '' 3401-3422 (West 2001 & Supp. 2005).





[29]Id. ' 3401(3) (West 2001).





[30]Id. '
3404(a)(5).





[31]Id. ' 3416 (West
2001).





[32]Taylor Elec. Servs. Inc. v. Armstrong Elec. Supply Co., 167 S.W.3d 522, 529 (Tex. App.CFort
Worth 2005, no pet.); see also Waco ISD v. Gibson, 22 S.W.3d 849, 850
(Tex. 2000).





[33]See 12
U.S.C.A. ' 3416.





[34]Id. '
2802(1), (4).





[35]Id. '' 2801-2811 (West 2001).





[36]Id. ' 2803(a)(1).





[37]Id. ' 2803(a)(2).





[38]Id. ' 2803(j)(1) (ABoard@ means the Board of Governors of the Federal Reserve
System.  12 U.S.C.A. '
2802(5)).





[39]Id. '
2803(c), (d), (j)(5)-(6), (l).





[40]Id. '
2804(b).





[41]See Tex. R. Civ. P.
205.1-.3.





[42]Id.





[43]See Tex. Penal Code Ann. ' 31.03 (Vernon Supp. 2005).





[44]See Tex. R. Civ. P.
215.2(c) (emphasis added); Tex. Code
Crim. Proc. Ann. art 24.09 (Vernon 1989) (emphasis added).





[45]LaRue v. Chief Oil & Gas, L.L.C., 167 S.W.3d 866, 879 (Tex. App.CFort
Worth 2005, no pet.) (citing Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 785 (Tex. 2001)).





[46]Thomas v. Cornyn, 71 S.W.3d 473, 478 (Tex. App.CAustin 2002, no pet.) (citing Act of May 29, 1995, 74th
Leg., R.S., ch. 1035, ' 1, 1995 Tex. Gen. Laws 5127).





[47]Tex. Gov't Code Ann. '' 552.001‑.353 (Vernon 2004 & Supp. 2005). 





[48]Id. '
552.002(a) (Vernon 2004).





[49]Id. '
552.028(a)(1).





[50]5 U.S.C.A. ' 552(a)(2) (West 1996 & Supp. 2005).





[51]Id. ' 551(1)
(West 1996).





[52]Id. ' 552(f)
(West 1996 & Supp. 2005)).





[53]Id. '
552(a)(4)(B) (West 2005).





[54]Id. '
552a(d)(1) (West 1996).





[55]Id. '
552a(g)(1).





[56]See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d
573, 577 (Tex. 2001).





[57]Choctaw Props.,
L.L.C. v. Aledo ISD, 127 S.W.3d 235, 242 (Tex. App.CWaco
2003, no pet.)(quoting Rodriguez v. Wal‑Mart Stores, Inc.,
52 S.W.3d 814, 823 (Tex. App.CSan Antonio 2001), rev'd on other grounds, 92
S.W.3d 502 (Tex. 2002)).





[58]See Johnson,
73 S.W.3d at 204 ; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 912 (Tex. 1997).





[59]See Tex. R. App. P. 47.1.





[60]See id.