**WACO INDEPENDENT SCHOOL DISTRICT, Petitioner,**

v.

**Lester and Coque GIBSON, Rev. Joe N. Bedford, A'Drana Gooden and Clara Cobb, Respondents.**

No. 98–0753.

Supreme Court of Texas.

Argued Jan. 5, 2000.

Decided May 11, 2000.

Rehearing Overruled Aug. 24, 2000.

---

**850**

Philip E. McCleery, Peter K. Rusek, Gregory Duane Bartoe, Waco, for Petitioner.

Michael B. Roberts, Waco, for Respondents.

Justice ENOCH delivered the opinion of the Court, joined by Justice BAKER, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES.

The court of appeals asserted jurisdiction over this interlocutory appeal, but concluded that it could not decide Waco Independent School District's standing and ripeness challenges to the plaintiffs' case for the first time on appeal because WISD did not properly preserve them for review.[1] We held in *Texas Association of Business v. Texas Air Control Board (TAB)*, however, that subject matter jurisdiction challenges cannot be waived, and may be raised for the first time on appeal.[2] Because standing and ripeness are components of subject matter jurisdiction,[3] the court of appeals erred in failing to consider Waco Independent School District's jurisdictional challenge. Although jurisdiction over interlocutory appeals is generally final in the court of appeals, this Court has jurisdiction to consider whether the court of appeals properly determined its own jurisdiction.[4] Because we conclude that the plaintiffs' claims are not ripe, we vacate the court of appeals' judgment and affirm the trial court's dismissal for want of jurisdiction of all but the plaintiffs' claim of an Open Meetings Act violation.[5]

In 1997, WISD adopted a student-promotion policy requiring students in first through eighth grades to obtain a satisfactory score on one of two standardized assessment tests to advance to the next grade. Under the policy, WISD administered the Iowa Test of Basic Skills (ITBS) to first and second graders, and the Texas Assessment of Academic Skills Test (TAAS) to third through eighth graders. The policy mandates satisfactory performance on the test in addition to satisfactory performance in attendance and on the school curriculum. Students who do not meet WISD's standard on the test attend a thirty-day intense acceleration summer program based on the students' individual needs. At the program's end, students take released versions of the TAAS. Students who then meet WISD's standard will be promoted. If students still do not meet the standard, they can take an Assessment Credit by Examination test in reading and math. Students that pass this test are then promoted. Students are retained only after these efforts are unsuccessful.

The Gibsons sued for injunctive relief on their own behalf to prevent WISD from implementing the plan. The suit alleges that minority students in the district will be harmed because they will fail the exams in disproportionate numbers and therefore be retained under the new policy. The Gibsons argue that retention will unfairly burden minority WISD students because it identifies and stigmatizes them as a "failure." The suit also alleges that the policy violates the Equal Rights and Due Course

---

**1.** 971 S.W.2d 199.

**2.** 852 S.W.2d 440, 445 (Tex.1993).

**3.** *See Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.,* 971 S.W.2d 439, 442 (Tex.1998).

**4.** *See Lesikar v. Rappeport,* 899 S.W.2d 654, 655 (Tex.1995).

**5.** The trial court dismissed all of the plaintiffs' claims except for a claim that WISD adopted the contested policy in violation of the Texas Open Meetings Act. WISD has not challenged that part of the judgment, and it is not before us.

of Law provisions of the Texas Constitution,[6] violates confidentiality provisions of the Texas Education Code,[7] and was adopted in violation of the Open Records Act[8] and Open Meetings Act.[9] WISD alleged in its answer that the Gibsons do not have standing because they are suing on their own behalf, not as representatives of their children. WISD also asserted that the case is not ripe for adjudication because when the Gibsons sued, WISD had not released the results of the assessment tests and therefore had not retained any students.

WISD moved to dismiss for want of jurisdiction, asserting that the Gibsons failed to exhaust their administrative remedies at the Texas Education Agency before suing in district court as the Education Code requires.[10] WISD did not reassert in its motion that the plaintiffs lacked standing or that the case was not ripe for adjudication. Although WISD did not include its subject matter jurisdiction challenge in its motion, the record before the trial court is replete with the district's assertions that the Gibsons' claim was not ripe. After a hearing, the trial court granted WISD's motion on all of the Gibsons' claims except the alleged Open Meetings Act violation. The Gibsons then perfected this interlocutory appeal. WISD responded to the appeal by adding standing and ripeness challenges to its original assertion that the Gibsons failed to exhaust their administrative remedies before suing in district court.

■ The court of appeals reversed and remanded, holding that the Gibsons proved their claims fell within exceptions to the exhaustion of remedies requirement, and that the trial court therefore had jurisdiction over the dispute.[11] The court of appeals, however, did not consider the merits of WISD's standing and ripeness challenges because "WISD failed to raise either of these issues in its motion to dismiss [the Gibsons'] suit," and because "the court below neither expressly nor impliedly ruled on ripeness or standing."[12] Thus the court concluded that standing and ripeness were not properly preserved for its review. We disagree. We decided in *TAB* that because subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal.[13] Thus, ripeness and standing components of subject matter jurisdiction cannot be waived. Consequently, the court of appeals erred in failing to reach the merits of WISD's jurisdictional complaint.

While WISD raises several challenges to the trial court's jurisdiction, the ripeness issue is dispositive. In *Patterson v. Planned Parenthood of Houston*, we considered the parameters of the ripeness doctrine in Texas.[14] In *Patterson*, we noted that "[r]ipeness, like standing, is a threshold issue that implicates subject matter jurisdiction, and like standing, emphasizes the need for a concrete injury for a justiciable claim to be presented."[15] While standing focuses on the issue of *who* may bring an action,[16] ripeness focuses on *when* that action may be brought.[17]

■ Under the ripeness doctrine, we consider whether, *at the time a lawsuit is*

---

6. TEX. CONST. art. I, § 3; art. I, § 19.

7. TEX. EDUC.CODE § 39.030.

8. TEX. GOV'T CODE § 552.101.

9. *Id.* § 551.002.

10. TEX. EDUC.CODE § 7.057

11. *See Gibson*, 971 S.W.2d at 203–04.

12. *Id.* at 200.

13. *See Texas Ass'n of Bus.*, 852 S.W.2d at 445.

14. *See Patterson*, 971 S.W.2d at 442–44.

15. *Id.* at 442 (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998)).

16. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 626–27 (Tex.1996).

17. *See Patterson*, 971 S.W.2d at 442.

*filed,* the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote."[18] Thus the ripeness analysis focuses on whether the case involves "uncertain or contingent future events that may not occur as anticipated or may not occur at all."[19] By focusing on whether the plaintiff has a concrete injury, the ripeness doctrine allows courts to avoid premature adjudication, and serves the constitutional interests in prohibiting advisory opinions.[20] A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass.[21] Because that is the case here, the trial court did not have jurisdiction to hear this dispute.

 When this lawsuit was filed, no student in the WISD had been retained or given notice of retention under the challenged policy because the TAAS and ITBS test results were not yet available. The only notices that WISD sent out were notices of possible retention if the students did not meet all requirements for promotion. Thus, at the time this suit was filed, the alleged harm to the students caused by retention was still contingent on uncertain future events, *i.e.,* the students' performance on the standardized tests and, if necessary, in WISD's remediation program. Moreover, the impact the Gibsons presumed was only hypothetical when the suit was filed; it may not occur as anticipated, or may not occur at all. There is simply no allegation that the Gibsons have suffered a concrete injury. Without a concrete injury from the WISD policy, the Gibsons have failed to show that the trial court had jurisdiction to decide this controversy.

Although the Gibsons cannot show that a concrete injury *has occurred,* the ripeness analysis would allow them to demonstrate a concrete injury by showing that it is *likely to occur.*[22] It is mere speculation in this case, however, that the alleged injury is likely to occur. The United States Supreme Court has suggested that the threat of harm can constitute a concrete injury, but the threat must be "direct and immediate" rather than conjectural, hypothetical, or remote.[23] To show that such injuries are likely to occur, for example, parties must demonstrate that the harm is imminent, but has not yet impacted them. The potential harm in this case is not imminent; whether WISD students will be retained remains contingent upon their performance on the standardized tests, *and,* if necessary, their subsequent performance in WISD's remediation efforts. Although it is well-documented that minority pass rates on the TAAS have been disproportionately lower than white students' pass rates, there was no evidence in this record that minorities will fail to be remediated in disproportionate numbers in WISD's program. While WISD's superintendent Roseanne Stripling, in answer to a question on cross-examination, stated that disproportionate numbers of minority students would be retained under the district's "policy," it is clear that she was referring to the results of the TAAS test, which all parties concede has a disproportionate impact, and not to the effort the district had adopted to remediate that problem.

The uncertainty of the policy's impact is evident in statements made at the hearing on WISD's motion to dismiss for lack of jurisdiction. Responding to WISD's assertion that the policy had not impacted any students when the Gibsons filed suit, the

---

18. *Id.*

19. Id. (citing 13A Wright et al., Federal Practice and Procedure, § 3532, at 112 (2d ed.1984)).

20. *See Patterson,* 971 S.W.2d at 442–43.

21. *See id.* at 443.

22. *See id.*

23. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

trial judge summarized the Gibsons' argument as the "impact's coming," and "[t]hey can feel it coming . . . ." The Gibsons' expert's testimony is similarly telling. When asked if he had considered the impact of WISD's policy, the expert cryptically responded, "*I cannot predict the future on that* unless I know that the delivery systems are in order." These statements indicate that the concrete injury required by a ripeness inquiry has not developed here.

The procedural stance of this case arguably leaves the Gibsons without an opportunity to amend their pleadings or to demonstrate jurisdiction on a complete record, giving them only a "sparse record" with which to controvert WISD's subject matter jurisdiction challenges. But we recognized in *TAB* that when an appellate court raises subject matter jurisdiction for the first time on appeal, litigants will not have an opportunity to cure defects.[24] As a safeguard then, we construe the petition in favor of the party asserting that the court has subject matter jurisdiction and review the entire record to ascertain if any evidence supports that assertion.[25] Having done so, the Court's decision still turns on the fact that *when the plaintiffs sued,* no test results were available, and no evidence of the probability of the remediation program's success or failure existed. With every available opportunity to generate record evidence opposing WISD's challenges, the Gibsons could not have done so because the evidence required to do so did not exist. Indeed, that is exactly why the claim is not ripe. Accordingly, because their alleged injury remains contingent on the results of both the test and, if necessary, the remediation program, the Gibsons' claim is not ripe for review. We note

that the Gibsons are not irrevocably harmed by this dismissal. Because the case is dismissed without prejudice, if they choose, they can re-file and develop a record demonstrating that the claims have ripened, allowing a new suit to proceed.

The ripeness doctrine prevents premature adjudication of hypothetical or contingent situations. For this Court to eschew the ripeness doctrine and allow the trial court to determine the merits of the Gibsons' claim as it stood when filed, would create an impermissible advisory opinion. Neither this Court, nor the trial court, has the power to counsel a legal conclusion on a hypothetical or contingent set of facts.[26] Consequently, we vacate the court of appeals' judgment and affirm the trial court's judgment dismissing this case for want of jurisdiction, except for the Gibsons' claim of an alleged Open Meetings Act violation.[27]

Justice HECHT filed a dissenting opinion, in which Chief Justice PHILLIPS and Justice OWEN joined.

Justice HECHT, joined by Chief Justice PHILLIPS and Justice OWEN, dissenting.

A party need not argue in the trial court, in order to later argue on appeal, that claims are not ripe for adjudication or that a party lacks standing to assert them. An appellate court may consider, in the first instance, challenges to ripeness and standing and other such prerequisites to subject matter jurisdiction, which is essential to a court's power to decide a case.[1] Indeed, an appellate court *must* examine such issues, even if on its own initiative, to

24. *See Texas Ass'n of Bus.,* 852 S.W.2d at 446.

25. *See id.*

26. *See Patterson,* 971 S.W.2d at 444.

27. Because of the trial court's decision in this case, the Gibsons sought both review of WISD's policy at the Texas Education Agency and an accelerated appeal, at the Tenth Court of Appeals. We review only the court of

appeals' determination of its own jurisdiction. The action before the Texas Education Agency has now been appealed to a Travis County district court, and remains pending there.

1. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443–446 (Tex.1993) ("*TAB* "); *See also State Bar of Texas v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994).

ensure that its decision on the merits is not merely advisory.[2] The court of appeals therefore erred in concluding that WISD's ripeness and standing arguments were not properly preserved for consideration on appeal.[3]

However, when an appeal is interlocutory, as this one is, an appellate court must be especially careful in determining subject matter jurisdiction in the first instance because the plaintiff has not had an opportunity either to amend his pleadings, as he would have had if the issue had been raised in the trial court by special exceptions or otherwise,[4] or to demonstrate jurisdiction on a complete record, as he would have had in a trial on the merits.[5] As we explained in *Texas Association of Business v. Texas Air Control Board:*

> A review of only the pleadings to determine subject matter jurisdiction is sufficient in the trial court because a litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged. Failing that, the suit is dismissed. When an appellate court questions jurisdiction on appeal for the first time, however, there is no opportunity to cure the defect. Therefore, when a Texas appellate court reviews the standing of a party sua sponte, it must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing.[6]

We raised the issue of standing sua sponte in *TAB* following trial on the merits and a final judgment, and to determine the issue we looked not only to the pleadings but to the entire record.

In the case now before us, the plaintiffs have had no opportunity either to amend their pleadings in response to special exceptions or to present a full record. WISD challenged subject matter jurisdiction in the trial court, but only because of the plaintiffs' failure to exhaust their administrative remedies, not because of a lack of ripeness or standing. The only hearing held was on WISD's motion. With the case in this posture, we must determine ripeness and standing not only by construing the plaintiffs' original petition in their favor, and considering the evidence offered at the hearing on WISD's motion to dismiss for failure to exhaust administrative remedies, but also by considering the possibility that the plaintiffs can amend their pleadings or offer evidence at a trial on the merits to show ripeness and standing. In dismissing the plaintiffs' claims in this case for lack of ripeness, the Court does none of these things. Accordingly, I dissent.

The plaintiffs sued WISD to enjoin it from implementing a policy, used by no other Texas school district, of retaining children in grades one through eight for failing one of two standardized tests, the Texas Assessment of Academic Skills test, or the Iowa Basic Skills Test. The plaintiffs assert three claims, two of which the Court dismisses for lack of ripeness. One is that the retention policy will have a racially discriminatory impact in violation of equal rights and due course of law provisions of the Texas Constitution. The other is that retention will necessarily result in disclosure of test results (since it will be obvious that a child was not promoted) in violation of the privacy requirements of section 39.030(b) of the Texas Education Code.[7] (The plaintiffs' third

2. See *TAB*, 852 S.W.2d at 444–446; *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

3. 971 S.W.2d 199, 200.

4. *TAB*, 852 S.W.2d at 446; 2 McDonald Texas Civil Practice § 8:18 (1992).

5. *TAB*, 852 S.W.2d at 446; 2 McDonald, *supra* note 4, § 8:15.

6. *TAB*, 852 S.W.2d at 446.

7. "The results of individual student performance on academic skills assessment instruments administered under this subchapter are confidential and may be released only in accordance with the Family Educational Rights and Privacy Act of 1974 (20 U.S.C. Section 1232g). However, overall student performance data shall be aggregated by ethnicity,

claim, that the retention policy was adopted in violation of the Open Meetings Act,[8] remains pending in the trial court).

For a claim to be ripe, injury must have occurred or be likely to occur, rather than being contingent or remote.[9] Plaintiffs concede that when they filed suit, no child had yet been retained, and thus they had not yet been injured. The Court concludes that the injury the plaintiffs claim they will suffer is not imminent because it is uncertain whether children will fail the standardized test, and if they do, whether remediation efforts to avoid retention, such as summer school, will not succeed.

The plaintiffs alleged in their original petition that in the prior year, nearly half the students in the grades to which the new retention policy would apply, had failed the standardized test they were given, and that the failure rates for white, Hispanic, and African–American students were 33%, 49%, and 57%, respectively. Taking these assertions as true, it is likely that some students will continue to fail the test in the future, and absent other efforts, that some disparity in pass rates among racial groups will persist. Thus, the Court is simply wrong when it concludes that WISD students' performance on the standardized tests is too contingent for the harm plaintiffs allege to be likely.

The plaintiffs also alleged that WISD's retention policy "threatens to retain well over half its student population based on the results of a standardized test," and that WISD had already written "letters to parents warning them that their children are at risk of retention due to 'projected T.A.A.S. scores'". The Court concludes that this assertion does not allege likely harm because it does not consider the potential success of remediation efforts for students who fail the tests. This conclu-

sion is wrong for three reasons. First, it refuses to take the plaintiffs' pleadings as true. The Court simply disagrees with the plaintiffs' assertions of harm. Second, the Court's conclusion ignores the fact that any child allowed to attempt remediation, such as by attending summer school, will be openly stigmatized as having failed the test, which the plaintiffs allege will violate the statutorily mandated confidentiality of test scores. A breach of confidentiality is part of the harm plaintiffs allege. Third, even assuming that plaintiffs must plead that remediation efforts will not avoid racially discriminatory retention, it fails to consider whether plaintiffs could do so.

The Court points to testimony by the plaintiffs' expert that he could not predict the future impact of the retention policy. There are three problems with this. First, the Court simply ignores other testimony by the same witness that based on his experience and test scores throughout the State, the policy would have a racially discriminatory effect. Second, the Court chooses to disregard testimony by WISD's witness agreeing that more Hispanic and black students would be retained, and that "this policy would have a disparate impact on the Hispanic and black community". The WISD witness—as the Court refuses to concede—concluded that the *policy*, which includes the summer remediation program, would result in a disparate impact, that more minority students than white students would be retained as a result. Neither witness excluded the effect of the remediation policy from their respective conclusions. The Court nonetheless claims that "there was no evidence in this record that minorities will fail to be remediated in disproportionate numbers in WISD's program," discounting the conces-

sex, grade level, subject area, campus, and district and made available to the public, with appropriate interpretations, at regularly scheduled meetings of the board of trustees of each school district. The information may not contain the names of individual students or teachers."

**8.** Tex. Gov't Code §§ 551.001–.146.

**9.** *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex.1998).

sion expressly made by WISD's witness by drawing an adverse, and awkward, inference. This approach hardly amounts to a search for "any evidence" supporting jurisdiction.[10] Finally, the Court fails to acknowledge testimony and evidence showing that remediation efforts will be optional, limited, and often expensive: optional, in that students need not avail themselves of remediation; limited, in that WISD's own hierarchy of preferences for placing students in its 30–day summer program contemplates the denial of that limited resource to those students it deems least likely to pass the TAAS requirement; and expensive, in that those who are denied or fail to gain promotion from the summer program must pay for the opportunity to take an examination for credit. For that matter, is not entirely clear that the summer remediation program will itself be free. The uncontradicted evidence in this case raises a prima facie case for jurisdiction; at the very least, the sparse record in this interlocutory appeal would raise a fact issue regarding ripeness.

More importantly, however, the Court's citation of such testimony is highly unfair to the plaintiffs, who adduced the testimony to show why they had not yet exhausted their administrative appeals, not why their claims were ripe. Never knowing that ripeness was an issue, since WISD never raised it, the plaintiffs offered no evidence on the issue. In this case, unlike TAB, jurisdiction cannot be determined on a full record. The Court does not consider whether the plaintiffs could have adduced evidence to demonstrate the ripeness of their claims when their case, which remains pending in the trial court, is further developed.

Because the Court dismisses the plaintiffs' claims as not being ripe, it does not consider the plaintiffs' standing to sue.

The plaintiffs do not sue on behalf of their children; indeed, not all of the plaintiffs have children subject to the retention policy. Rather, the plaintiffs claim injuries of their own. Their original petition alleges:

Plaintiffs have been and will continue to be damaged and injured by Defendant's conduct by having their children threatened with retention based on a stringent standard that does not exist elsewhere in the State of Texas; by the lowered self-esteem of their children who, having received passing grades in their course work, are threatened with retention based on the results of a single test; by having their children stigmatized as failures in violation of the confidentiality provisions of the Texas Education Code; [and] by Defendant's misuse of the statewide assessment program mandated to ensure school accountability and interpreting it to punish children for the failure of the educational system as opposed to taking responsibility for that failure....

I need not determine whether these assertions demonstrate standing for the plaintiffs to sue on their own behalf, instead of on behalf of children likely to be retained. Absent special exceptions to the pleadings and a more complete evidentiary record, the Court simply cannot determine whether the plaintiffs can show standing in some way.

I would therefore hold that while WISD is entitled to raise issues of ripeness and standing for the first time in this interlocutory appeal, it has not shown that the plaintiffs have had a fair opportunity to plead or prove ripeness and standing and failed to do so, so that their claims must be dismissed.

The plaintiffs contend that they are not required to exhaust available administrative remedies because irreparable injury is imminent. WISD failed to establish that

---

**10.** TAB, 852 S.W.2d at 446. Cf. Peek v. Equipment Service Co., 779 S.W.2d 802, 804 (Tex.1989)(courts presume in favor of jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition)(quoting Smith v. Texas Improvement Co., 570 S.W.2d 90, 92 (Tex.Civ.App.—Dallas 1978, no writ).)

immediate administrative relief equivalent to injunctive relief is available to the plaintiffs, and thus did not meet its burden of showing that plaintiffs were required to exhaust administrative remedies.[11] I would not reach the plaintiffs' other exhaustion arguments. Accordingly, I would affirm the court of appeals' judgment remanding the case to the trial court for further proceedings.

11. *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex.1987).