# IN THE SUPREME COURT OF TEXAS

═══════════
No. 10-0548
═══════════

RUSK STATE HOSPITAL, PETITIONER,

v.

DENNIS BLACK AND PAM BLACK, INDIVIDUALLY AND AS REPRESENTATIVES OF
THE ESTATE OF TRAVIS BONHAM BLACK, DECEASED, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued October 6, 2012**

JUSTICE JOHNSON delivered the opinion of the Court, in which JUSTICE HECHT, JUSTICE WAINWRIGHT, JUSTICE GREEN, JUSTICE WILLETT, and JUSTICE GUZMAN joined.

JUSTICE HECHT filed a concurring opinion.

JUSTICE LEHRMANN filed a concurring and dissenting opinion, in which CHIEF JUSTICE JEFFERSON and JUSTICE MEDINA joined.

In this health care liability claim the trial court denied Rusk State Hospital's challenge to the plaintiffs' expert reports. The Hospital filed an interlocutory appeal from that ruling. On appeal the Hospital, for the first time, asserted it was immune from suit. The court of appeals refused to consider the immunity issue because it had not been presented to the trial court. After addressing the merits of the Hospital's challenge to the expert reports, the court of appeals remanded the case to the trial court for further proceedings.

We conclude that the court of appeals erred by refusing to consider the immunity claim because immunity from suit implicates courts' subject-matter jurisdiction. After considering the immunity claim, which was briefed and argued in this Court, however, we affirm the judgment of the court of appeals remanding the case to the trial court because (1) the pleadings and record neither establish a waiver of the Hospital's immunity nor conclusively negate such a waiver; and (2) the Hospital has not shown conclusively that either the plaintiffs had a full, fair opportunity in the trial court to develop the record as to immunity and amend their pleadings, or that if the case is remanded and the plaintiffs are given such an opportunity they cannot show immunity has been waived.

## I. Background

Travis Black was a psychiatric patient in Rusk State Hospital when he was found unconscious with a plastic bag over his head. Efforts to resuscitate him were unsuccessful and he died. Delbert Van Dusen, M.D., performed an autopsy, determined Travis died of asphyxiation, and concluded that he committed suicide.

Travis's parents, Dennis and Pam Black, filed a health care liability suit against the Hospital and other entities that are not parties to this appeal.[1] The Blacks alleged that the Hospital (1) was negligent by providing or allowing Travis access to a plastic bag that was inherently dangerous in an inpatient psychiatric setting, and the negligence involved a condition, use, or misuse of tangible personal property; (2) was negligent in training and supervising its employees, which resulted in Travis's death either by assisted suicide or murder; and (3) acted with deliberate indifference to

---

[1] The Blacks also sued the State of Texas and the Texas Department of State Health Services. The court of appeals dismissed the claims against the State and the Department. ___ S.W.3d ___, ___. The Blacks do not complain of that action.

2

Travis's medical and psychiatric needs by depriving him of sleep and refusing to prescribe appropriate medication.

The Blacks timely served the Hospital with an expert report from psychologist Dennis Combs, Ph.D., and a copy of Dr. Van Dusen's autopsy report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351. The Hospital moved for dismissal of the suit on the basis that these reports failed to satisfy the statutory requirements of section 74.351. *See id.* The trial court denied the motion and the Hospital appealed. *See id.* § 51.014(a)(9) (providing that a person may immediately appeal an interlocutory trial court order that denies all or part of the relief sought by a motion under section 74.351(b)).

On interlocutory appeal the Hospital argued that the trial court erred by denying its motion to dismiss and, for the first time, asserted it had sovereign immunity from suit. Regarding its immunity claim, the Hospital argued that the Blacks' pleadings did not allege a cause of action for which the Hospital's immunity was waived and therefore the Blacks failed to meet their burden of showing the trial court had jurisdiction. ___ S.W.3d ___, ___. The Blacks responded that their filings complied with statutory expert report requirements; the court of appeals could not consider the Hospital's immunity argument because it was neither presented to nor considered by the trial court; and in any event their pleadings were sufficient to demonstrate a claim for which the Hospital's immunity was waived. *Id.* at ___.

The court of appeals did not address the immunity issue because "the weight of authority" precluded it from considering the issue on interlocutory appeal when it had not been presented to or ruled on by the trial court. *Id.* at ___. The appeals court, considering both Dr. Combs's report and

3

Dr. Van Dusen's autopsy report as statutory reports, concluded that the Blacks' claims regarding sleep deprivation, failure to prescribe adequate medication, and indifference to Travis's medical needs were not addressed by them, so it dismissed those claims with prejudice. *Id.* at ___. Although the appeals court also concluded that the Blacks' expert reports were deficient with respect to their remaining negligence claims, it determined the reports nonetheless represented a good-faith effort to comply with section 74.351 and remanded for the trial court to consider whether to grant a 30-day extension for the Blacks to cure the deficiencies. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c) (providing that "the court may grant one 30-day extension to the claimant in order to cure the deficiency" if it concludes the claimant's timely filed expert reports are deficient); *Leland v. Brandal*, 257 S.W.3d 204, 205 (Tex. 2008) (holding that "when elements of a timely filed expert report are found deficient, either by the trial court or on appeal, one thirty-day extension to cure the report may be granted" and remanding the case to the trial court for it to consider whether to grant an extension).

The Blacks did not seek review of the court of appeals' decision, but the Hospital did and we granted its petition for review. 54 Tex. Sup. Ct. J. 1156 (June 17, 2011). The Hospital argues that immunity from suit deprives the trial court of subject-matter jurisdiction and the interlocutory appeal statute did not preclude the court of appeals from determining the jurisdictional issue. The Hospital then argues that we should dismiss the case because the Blacks' pleadings, even if true, do not allege a claim for which the Hospital's immunity has been waived by the Tort Claims Act (TCA). *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109.

We begin by addressing our jurisdiction over the interlocutory appeal.

4

## II. Interlocutory Appeal Jurisdiction

Generally, Texas appellate courts have jurisdiction only over final judgments. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001). An exception exists for certain interlocutory orders. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a); *Jackson*, 53 S.W.3d at 355. In relevant part, section 51.014(a) provides that

> A person may appeal from an interlocutory order of a district court, county court at law, or county court that:
> . . .
> (8) grants or denies a plea to the jurisdiction by a governmental unit . . . ; [or]
> . . .
> (9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351.

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8), (9). Section 74.351(b), which section 51.014(9) references, specifies that a court must dismiss a health care liability claim if the plaintiff does not timely serve an expert report and the defendant physician or health care provider properly objects. *See id.* § 74.351(b).

When an interlocutory appeal is taken pursuant to section 51.014(a), the court of appeals' judgment ordinarily is conclusive. *See* TEX. GOV'T CODE § 22.225(b)(3). But we may consider an interlocutory appeal when the court of appeals' decision conflicts with the decision of another court of appeals on a material issue of law. *Id.* §§ 22.001(a)(2), (e); 22.225(c). This case presents an issue on which the courts of appeals are in conflict: May an appellate court consider on interlocutory appeal whether a governmental entity has immunity when the trial court did not address the issue first. *Compare* ___ S.W.3d. at ___ ("[W]e hold that the weight of authority precludes our

5

consideration on interlocutory appeal of jurisdictional challenges not presented to or ruled on by the trial court."), *with Fort Bend Cnty. Toll Road Auth. v. Olivares*, 316 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("An appellate court must consider challenges to the trial court's subject-matter jurisdiction on interlocutory appeal, regardless of whether such challenges were presented to or determined by the trial court."). We have jurisdiction to resolve the conflict. TEX. GOV'T CODE § 22.001(a)(2).

## III.  Sovereign Immunity

### A.  Nature of Immunity

The doctrine of sovereign immunity derives from the common law and has long been part of Texas jurisprudence. *See Hosner v. DeYoung*, 1 Tex. 764, 769 (1847) (holding that the State could not be sued in her own courts absent her consent "and then only in the manner indicated"); *see also City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011) ("[The] boundaries [of sovereign immunity] are established by the judiciary, but we have consistently held that waivers of it are the prerogative of the Legislature.").

Sovereign immunity in Texas embodies two concepts: immunity from liability and immunity from suit. *Albert*, 354 S.W.3d at 373. Immunity from liability protects governmental entities from judgments, while immunity from suit completely bars actions against those entities unless the Legislature expressly consents to suit. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) ("[I]mmunity from suit . . . bars suit against [a governmental] entity altogether."); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003) ("Unlike immunity from suit, immunity from liability does not

6

affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction."); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002) ("We again reaffirm that it is the Legislature's sole province to waive or abrogate sovereign immunity."); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam).[2]

The Legislature has waived governmental entities' immunity from certain claims by means of the Tort Claims Act (TCA). *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. But the TCA embodies only limited waivers of sovereign immunity; it does not abolish it. *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996).

### B. Immunity and Interlocutory Appeals

Referencing our decision in *Waco Independent School District v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000), the Hospital argues that immunity from suit is an issue of subject-matter jurisdiction that may be raised for the first time on interlocutory appeal in the same manner as standing and ripeness. Conversely, the Blacks argue that *Gibson* is distinguishable and other cases cited by the Hospital do not support its position because they involved either appeals from final judgments or interlocutory appeals in which the trial court had granted or denied a plea to the jurisdiction.

In *Gibson*, the trial court granted, in part, Waco Independent School District's (WISD) motion to dismiss for want of jurisdiction. 22 S.W.3d at 851. The motion was based on WISD's claim that the Gibsons failed to exhaust their administrative remedies before filing suit. *Id.* The

---

[2] In this case we address immunity from suit, so references to immunity will be references only to immunity from suit unless specified otherwise.

Gibsons filed an interlocutory appeal. *Id.* WISD responded not only by re-urging its argument concerning exhaustion of remedies, but also by challenging the trial court's jurisdiction on standing and ripeness grounds. *See id.* at 851. The court of appeals refused to address WISD's standing and ripeness arguments, reasoning that those issues were not preserved for appeal because WISD had not presented them to the trial court in its motion to dismiss. *Id.* This Court reversed:

> [T]he court [of appeals] concluded that standing and ripeness were not properly preserved for its review. We disagree. We decided in [*Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 445 (Tex. 1993)] that because subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal.

*Id.*

The Blacks are correct that *Gibson* does not precisely square with the facts and posture of this case. *Gibson* involved an interlocutory appeal from a trial court order granting a plea to the jurisdiction, whereas here no jurisdictional argument was presented to or ruled on by the trial court. *Compare id.* at 851, *with* ___ S.W.3d at ___. The jurisdictional issues in *Gibson* were also different: there the questions concerned standing and ripeness rather than immunity. *See Gibson*, 22 S.W.3d at 851. Further, in *Gibson* the school district pled that the Gibsons' claims were not ripe and that the Gibsons did not have standing. *Id.* But we disagree that these differences dictate a different outcome here.

The court of appeals reasoned that section 51.014(a) precluded it from reviewing an immunity claim that was neither raised nor ruled upon in the trial court. *See* ___ S.W.3d ___. The Hospital argues that this reasoning misapprehends the analysis regarding section 51.014(a) because the statute does not supplant the constitutional requirement that courts must have jurisdiction to

8

adjudicate a dispute. We agree with the Hospital. The inquiry is not whether section 51.014(a) *grants* appellate courts authority to review an immunity claim; rather, it is whether section 51.014(a) *divests* appellate courts of such authority. We conclude that it does not.

We have said on numerous occasions that sovereign immunity deprives courts of subject-matter jurisdiction. *See, e.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Jones*, 8 S.W.3d at 638; *see also State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009) (recognizing that a plea to the jurisdiction properly presents the immunity issue). It has been suggested that while immunity *implicates* subject-matter jurisdiction, it does not necessarily *equate* to a lack of subject-matter jurisdiction. *See Reata*, 197 S.W.3d at 381 ("[S]overeign immunity includes concerns about both subject-matter and personal jurisdiction but is identical to neither.") (Brister, J., concurring). The dissent echoes that theme today. But regardless of whether immunity equates to a lack of subject-matter jurisdiction for all purposes, it implicates a court's subject-matter jurisdiction over pending claims. So if a governmental entity validly asserts that it is immune from a pending claim, any court decision regarding that claim is advisory to the extent it addresses issues other than immunity, and the Texas Constitution does not afford courts jurisdiction to make advisory decisions or issue advisory opinions. *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions."); *see also* TEX. CONST. art. IV, §§ 1, 22 (empowering the attorney general, as part of the executive department of government, to issue advisory opinions to the governor and other officials).

Section 51.014(a) expands the jurisdiction of courts of appeals. It specifies circumstances in which a litigant may immediately appeal from an order that would otherwise be unappealable because a final judgment has not been rendered in the matter. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a); *see also Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985) (orig. proceeding) (per curiam) ("Unless there is a statute specifically authorizing an interlocutory appeal, the Texas appellate courts have jurisdiction only over final judgments."). Because section 51.014(a) is a limited exception to the general rule that a party may appeal only from final judgments or orders, it is strictly construed. *See Bally*, 53 S.W.3d at 355. Strictly construing a statute, however, does not call for reading restrictions into it that violate constitutional principles. The court of appeals effectively construed section 51.014(a) to require appellate courts to address the merits of cases without regard to whether the courts have jurisdiction. That construction violates constitutional principles. TEX. CONST. art. II, § 1. But section 51.014(a) can be construed in a way so that it does not conflict with the Constitution. *See Stockton v. Offenbach*, 336 S.W.3d 610, 618 (Tex. 2011); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 169 (Tex. 2004). *See also* TEX. GOV'T CODE § 311.021(1) (specifying that the Legislature intends statutes to comply with the Constitution). We hold that if immunity is first asserted on interlocutory appeal, section 51.014(a) does not preclude the appellate court from having to consider the issue at the outset in order to determine whether it has jurisdiction to address the merits. We disapprove of those cases in which courts of appeals have held differently.[3]

---

[3] *E.g.*, *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 747 n.14 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd); *City of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399, 404 (Tex. App.—Austin 2008, no pet.); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 244 S.W.3d 455, 461-62 (Tex. App.—Dallas

10

In addition to the constitutional concerns set out above, we note a practical significance to precluding appellate review of immunity on interlocutory appeal: precluding such review would be inconsistent with the purpose of section 51.014(a). If we agreed with the court of appeals' reasoning—as the Blacks ask us to do and the dissent contends we should do—then on remand the Hospital could assert immunity and file a plea to the jurisdiction. If its plea were denied the Hospital could file another interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). Such a process would work against the main purpose of the interlocutory appeal statute, which is to increase efficiency of the judicial process. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 845 (Tex. 2007).

But as we have previously acknowledged, a plaintiff may not have had fair opportunity to address jurisdictional issues by amending its pleadings or developing the record when the jurisdictional issues were not raised in the trial court. *See Gibson*, 22 S.W.3d at 853 (recognizing that safeguards are necessary to protect a plaintiff when an appellate court considers an issue of subject-matter jurisdiction in the first instance because the plaintiff has not had an opportunity to amend its pleadings, but concluding that the Gibsons could not show their claim was ripe even with "every available opportunity to generate record evidence opposing WISD's challenges"). Under such circumstances appellate courts must construe the pleadings in favor of the party asserting jurisdiction, and, if necessary, review the record for evidence supporting jurisdiction. *Tex. Ass'n of*

2007), *aff'd on other grounds*, 324 S.W.3d 544 (Tex. 2010); *Kinney Cnty. Groundwater Conservation Dist. v. Boulware*, 238 S.W.3d 452, 461 (Tex. App.—San Antonio 2007, no pet.); *Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App.—Austin 2006, pet. denied); *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 687-88 (Tex. App.—Dallas 2003, pet. denied).

*Bus.*, 852 S.W.2d at 446. In some instances the pleadings or record may conclusively negate the existence of jurisdiction, in which case the suit should be dismissed. *See Miranda*, 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."). But if the pleadings and record neither demonstrate jurisdiction nor conclusively negate it, then in order to obtain dismissal of the plaintiff's claim, the defendant entity has the burden to show either that the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings; or, if such opportunity was not given, that the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded. If the governmental entity meets this burden, then the appellate court should dismiss the plaintiff's case. *See Koseoglu*, 233 S.W.3d at 840 ("[W]e agree that Koseoglu deserves the opportunity to amend his pleadings if the defects can be cured. But Koseoglu's pleading defects cannot be cured, and he has made no suggestion as to how to cure the jurisdictional defect."); *Gibson*, 22 S.W.3d at 853 ("With every available opportunity to generate record evidence opposing WISD's challenges, the Gibsons could not have done so because the evidence required to do so did not exist."). If, however, the governmental entity does not meet this burden, the appellate court should remand the case to the trial court for further proceedings. *See Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007) ("If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded an opportunity to replead."); *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 559 (Tex. 2002) (remanding a case to the

12

trial court for repleading when the pleadings failed to show jurisdiction but did not affirmatively demonstrate an incurable jurisdictional defect).

## C.  Response to the Dissent

The dissent urges that we fully re-examine the basis for our numerous prior statements that immunity deprives courts of subject-matter jurisdiction.[4]  What the dissent effectively urges is a change in the nature of immunity in Texas, and in the relationship between the legislative and judicial branches of government regarding management of the public fisc.  That is a significant issue, but the parties did not raise it in the courts below or this Court.  Addressing it would take us beyond what is necessary to decide this appeal and we decline to do so, except to the extent it is addressed by our opinion and holding.

## IV.  The Blacks' Claim

## A.  The Tort Claims Act

The court of appeals did not address the Hospital's claim of immunity.  Rather than remanding the case to the court of appeals for it to do so, however, we address the issue in the interest of judicial economy. *See* TEX. R. APP. P. 53.4; *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 855 (Tex. 2011).

---

[4] *See Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258 (Tex. 2010) (per curiam); *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 202 (Tex. 2010); *Lueck*, 290 S.W.3d at 880-81; *Koseoglu*, 233 S.W.3d at 843; *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Reata*, 197 S.W.3d at 374; *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Miranda*, 133 S.W.3d at 225-26; *Hoff v. Nueces Cnty.*, 153 S.W.3d 45, 48 (Tex. 2004) (per curiam); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *IT-Davy*, 74 S.W.3d at 855; *Dep't of Transp. v. Garza*, 70 S.W.3d 802, 803 (Tex. 2002); *Travis Cnty. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex. 2002), *superseded on other grounds by statute as recognized in*, *Tooke*, 197 S.W.3d at 342; *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 866 (Tex. 2001); *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 585 (Tex. 2001); *Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam).

As relevant to the Blacks' claim against the Hospital, the TCA provides that a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2). Section 101.021(2) waives immunity for claims based upon the "use" of tangible personal property only when the governmental unit itself uses the property. *See id.*; *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 245-46 (Tex. 2004). A governmental unit does not "use" property within the meaning of the TCA when it merely allows someone else to use it. *Cowan*, 128 S.W.3d at 246; *see Dallas Cnty. v. Posey*, 290 S.W.3d 869, 871 (Tex. 2009). Immunity is waived for claims based on a "condition" of tangible property if the condition proximately causes personal injury or death. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2); *Posey*, 290 S.W.3d at 872; *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). A condition does not proximately cause an injury or death if it does no more than furnish the means to make injury or death possible; that is, immunity is waived only if the condition (1) poses a hazard in the intended and ordinary use of the property and (2) actually causes an injury or death. *See Posey*, 290 S.W.3d at 871, 873; *Bossley*, 968 S.W.2d at 343. The TCA does not waive immunity for claims arising from intentional torts. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, . . . or any other intentional tort.").

## B. Was the Hospital's Immunity Waived?

The Hospital contends the Blacks' allegations that it provided or failed to prohibit access to a plastic bag, or that a Hospital employee either murdered Travis or assisted his suicide, do not fit

14

within the TCA's limited waiver of immunity, even if they are true. The Blacks disagree. They emphasize that the Hospital's policy classified the plastic bag as inherently dangerous in an inpatient psychiatric setting. The Blacks argue that their pleadings assert the Hospital was negligent in providing, furnishing, or allowing Travis to access the bag; its negligence involved a use or condition of tangible personal property; and the negligence proximately caused Travis's death. They suggest such pleadings sufficiently allege a claim within the TCA's waiver of immunity. We disagree with the Blacks.

Neither providing nor prohibiting access to the bag was a "use." The Blacks' "use" argument erroneously equates providing, furnishing, or allowing access to tangible property with putting or bringing the property into action or service or applying the property to a given purpose. *See Cowan*, 128 S.W.3d at 245-46 (explaining that "use" means "to put or bring into action or service; to employ for or apply to a given purpose" (citations omitted)). Comparing *Cowan* to the case at bar illustrates this point. *Cowan* involved the death of James Roy Cowan, a psychiatric patient at San Antonio State Hospital. *Id.* at 245. The hospital allowed Cowan access to suspenders and a walker, which Cowan then used in causing his own death. *Id.* We held that the hospital's immunity was not waived by the TCA because the hospital did not "use" the suspenders and walker within the meaning of section 101.021(2) by merely giving them to Cowan. *See id.* at 246 ("[T]he Hospital's immunity can be waived only for its own use of Cowan's walker and suspenders, and not by Cowan's use of them."). Here, the Blacks allege the Hospital allowed Travis access to the plastic bag that was used in causing his death. These allegations do not present a claim for which the Hospital's immunity is waived by the TCA because, as we held in *Cowan*, a hospital does not "use" tangible personal

property (*e.g.*, a plastic bag) within the meaning of section 101.021(2) by merely providing, furnishing, or allowing a patient access to it.

The Blacks also allege that a "condition" of the plastic bag caused Travis's death. They emphasize the plastic bag was a contraband item and inherently dangerous in the inpatient psychiatric setting. These facts, they argue, bring their claim under the TCA's waiver of immunity pursuant to our decision in *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex. 1966). The Hospital responds that the Blacks' reliance on *Lowe* is misplaced because in that case the property was being put to its intended and ordinary use when a defect in the property caused an injury. The Hospital argues that because the plastic bag was not being put to its ordinary, intended use when it caused Travis's death, the Hospital's immunity is not waived for a claim based on the alleged condition of the bag. The Hospital is correct.

In *Lowe*, the plaintiff alleged that he injured his knee playing football after the University's football coach ordered him to remove his knee brace and reenter a game without it. *Id.* at 302 (Greenhill, C.J., concurring). The Court concluded that the knee brace was an integral part of Lowe's football uniform and held that the TCA waived the University's immunity because the uniform it gave Lowe was defective due to its lack of a knee brace. *See id.* at 300 (majority opinion). We subsequently limited the precedential value of *Lowe* "to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that lack of this integral component led to the plaintiff's injuries." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996).

16

Here, the Blacks argue that the Hospital's act of furnishing Travis with a plastic bag considered inherently dangerous in the inpatient psychiatric setting was analogous to giving him property that lacked an integral safety component. They support this assertion by pointing out that we framed the issue in *Cowan* as "whether merely providing someone with personal property that is *not itself inherently unsafe* is a 'use' within the meaning of the Act." 128 S.W.3d at 245 (emphasis added). But, as the Hospital maintains, the Blacks' argument fails to recognize that the TCA waives immunity for an inherently dangerous condition of tangible personal property only if the condition poses a hazard when the property is put to its intended and ordinary use, which the plastic bag was not. *See Posey*, 290 S.W.3d at 872. In the circumstances of Travis's care at the Hospital, any inherently dangerous aspects of the plastic bag were at most a means to make his death possible. *Cf. id.* (reasoning that exposed telephone wires did not proximately cause an inmate's death because the exposed wires were no more than a condition of the property that the inmate used to form a ligature to take his life).

The Blacks alternatively urge that the Hospital's negligence resulted in Travis's death by assisted suicide or murder. Their argument focuses on the possibility that a Hospital employee assisted Travis in committing suicide, and they contend that aiding suicide is not an intentional tort within the meaning of section 101.057. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) (providing that the TCA does not apply to claims arising out of intentional torts). The Hospital's response is twofold. It first asserts that the TCA waives immunity only for certain torts, and assisted suicide is a crime, not a tort. Second, the Hospital argues that even if assisted suicide falls within the ambit of the TCA, it is more akin to an intentional tort than negligence because it requires an intent to

17

cause injury or death, *see* TEX. PENAL CODE § 22.08(a), and section 101.057(2) specifies that the Hospital's immunity is not waived for such a claim. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2). We first address the Hospital's second argument because it is dispositive.

A person commits the criminal offense of aiding suicide if "with intent to promote or assist the commission of suicide by another, he aids or attempts to aid the other to commit suicide." TEX. PENAL CODE § 22.08(a). The statute proscribes action taken with the intent that a suicide result. Actions taken with the specific intent to inflict harm are characterized as intentional torts. *See Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985). Thus, assuming, without deciding, that assisting suicide or murder is a tort, it requires actions taken with intent to cause harm and is an intentional tort. The Hospital's immunity as to such a tort is not waived. *See City of Laredo v. Nuno*, 94 S.W.3d 786, 789 (Tex. App.—San Antonio 2002, no pet.) (holding that section 101.057(2) applied to claims against a police officer in part because the officer's conduct was referable to an intentional decision to seize a vehicle illegally).

In sum, even construed in their favor, the Blacks' pleadings do not allege a cause of action within the TCA's waiver of the Hospital's immunity. And the record does not contain any evidence to support jurisdiction.

The Hospital argues that if we reach this point in our analysis, we should dismiss the Blacks' claims with prejudice because they failed to carry their burden to show the trial court had jurisdiction. *See, e.g.*, *Miranda*, 133 S.W.3d at 226-27; *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985). But because the Hospital made its immunity argument for the first time in the court of appeals, the case will be remanded for further proceedings on the jurisdictional issue unless the

18

Hospital shows that one of three situations exist: (1) the Blacks' pleadings or the record conclusively negate jurisdiction; (2) the Blacks had a full and fair opportunity in the trial court to develop the record and amend their pleadings to show jurisdiction yet failed to do so; or (3) if the Blacks did not have such an opportunity, they cannot show jurisdiction even if the case is remanded to the trial court and they are given the opportunity to develop the record as to jurisdiction and amend their pleadings. We next look to see whether the Hospital has conclusively shown one of the above situations.

The Blacks contend that they did not have a fair opportunity in the trial court to develop the record as to jurisdiction. They note that there have been no oral depositions of the parties and they have been unable to explore the basis of statements contained in a report based on the Texas Department of Family and Protective Service's investigation into Travis's death—particularly statements of another Hospital patient who claimed to have seen a Hospital staff member putting a bag over Travis's head.

We agree with the Blacks, in part. The Hospital has not shown conclusively by this record either that they had a full and fair opportunity in the trial court to develop the record as to jurisdiction and amend their pleadings, or that if the case is remanded to the trial court for further proceedings they will be unable to show jurisdiction. Thus, the cause will be remanded to the trial court for further proceedings.

## VI. Conclusion

The judgment of the court of appeals is affirmed. The Blacks' claims against the Hospital are remanded to the trial court for further proceedings consistent with this opinion.

19

_____
Phil Johnson
Justice

**OPINION DELIVERED:** August 31, 2012