IN THE

TENTH COURT OF
APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-04-00286-CV

 

In re Mikle Gene Lee

 

 



Original
Proceeding

 

 



MEMORANDUM 
Opinion



 

            Mikle
Gene Lee filed for divorce from Mary Lucile Lee.  The parties had mediated a settlement
agreement of their property division. 
The trial court did not accept the mediated agreement.  After a jury trial, the trial court entered a
decree of divorce.  Lucy appealed, arguing
that the trial court was required to enter a decree of divorce based on the
settlement agreement.  We issued an
opinion affirming the trial court’s judgment. 
We have not yet issued our mandate.

Not long after the trial court entered its
divorce decree, Lucy filed suit in Bell County alleging Gene breached the mediated settlement agreement.  Gene requests this Court to issue a writ of
injunction prohibiting his former wife, Mary Lucile Lee, from prosecuting that
lawsuit in Bell County or in any other trial court.

The courts of appeals have limited injunctive
powers.  "Each court of appeals . .
. may issue . . . all . . . writs necessary to enforce the jurisdiction of the
court." Tex. Gov’t Code Ann.
§ 22.221(a) (Vernon Supp. 2004).  
A court of appeals "has no original jurisdiction to grant writs of
injunction, except to protect its jurisdiction over the subject matter of a
pending appeal, or to prevent an unlawful interference with the enforcement of
its judgments and decrees."  Ott v. Bell, 606 S.W.2d 955, 957 (Tex.
Civ. App.—Waco 1980, no writ).  An
injunction will not lie in the courts of appeals merely to preserve the status
quo pending appeal. EMW Mfg. Co. v.
Lemons, 724 S.W.2d 425, 426 (Tex. App.--Fort Worth 1987, orig.
proceeding).  Nor will injunction lie
merely "to protect a party from damage pending appeal." Gibson v. Waco Indep.
Sch. Dist., 971 S.W.2d 199, 204
(Tex. App.—Waco 1998) (quoting Parsons v.
Galveston County Employees Credit Union, 576 S.W.2d 99, 99 (Tex. Civ.
App.—Houston [1st Dist.] 1978, no writ)), Gibson
vacated on other grounds, 22 S.W.3d 849 (Tex. 2000).

We lack jurisdiction to issue the writ.

Gene contends that this suit is a collateral
attack on our jurisdiction.  He also
contends that he will suffer irreparable harm unless the suit in Bell County is enjoined.  But we have
nothing more to do in the appeal other than issue a mandate.  And an injunction will not issue merely to
protect a party from damage pending an appeal.




Therefore, the petition is denied.

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Before
Chief Justice Gray,

          Justice Vance, and

          Justice Reyna

(Justice
Vance concurring with note)*

Writ
denied

Opinion
delivered and filed October 13, 2004

[CV06]

 

* “(Justice Vance concurs in denying the
petition, but on different grounds.  The
majority’s opinion in the divorce appeal essentially holds that the mediated
settlement agreement had nothing to do with the divorce suit.  (“There was no written agreement between the
parties to mediate and there was no referral by the court based on a written
agreement or on the court’s own motion to mediation.”  Because this court has held that the agreement
was free-standing, a holding with which I disagree, we cannot now interfere in
a suit for its enforcement.)”








 






ne-height:200%'>[3]  (Id. at 7.)  MacEachran also argues
that “no facts are set forth in the affidavit explaining how Investigator
Sparks determined that” the address of the suspected place “was the residence
of Appellant.”  (Id. at 9.)  MacEachran also argues that the warrant was
“stale.”  (Id. at 11 (citing Hafford v. State, 989 S.W.2d 439,
440 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).)

      MacEachran concedes that “where conclusory
statements are used in support of probable cause, the affidavit should be
reviewed absent the conclusory statements in assessing whether probable cause for
a search exists.”  (Br. at 11 (citing Massey v. State, 933 S.W.2d 141,
148 (Tex. Crim. App. 1984)).)  Even disregarding the information supplied by
the informant and prior surveillance, for the reasons stated below, the
affidavit states probable cause.

      Next, MacEachran complains concerning the
officers’ approach to MacEachran’s trailer.  The affidavit continues:

6.   Investigator Sparks and Investigator Adams
went to the All American Texas RV Park at approximately 10:30 P.M. to conduct
surveillance of Maceachran’s residence located at the suspected place.

. . . .

9.   . . . Investigators made contact
with the occupant[] of the residence and identified [hi]m as William Loyd
Maceachran W/M 09-05-1958 . . . .

[sic] (1 C.R. 70 (bracketed alterations and
ellipses added).)  MacEachran argues that the affidavit “provides no facts
asserting that the individual he contacts at” MacEachran’s trailer “is one and
the same individual that was arrested and cited at Wal-mart for shoplifting.” 
(Br. at 6-7.)  The affidavit states that the trailer was “in charge of and
controlled by” a “William Loyd Maceachran (W/M DOB: 09-05-1958) as verified by
an investigation conducted by Burleson Police Department reference Theft under
$50 from the Wal-mart on 12-15-2004.”  [sic] (1 C.R. 68.)  The affidavit thus
relies on information from other officers in identifying MacEachran by name,
race, gender, and date of birth.  It is a reasonable inference that the William
Loyd Maceachran identified as the thief is one and the same as appellant William
Loyd Maceachran identified as being in control of the trailer.  

      The affidavit continues:

7.   Upon first arrival Investigators smelled a
very strong odor of ether common with the manufacturing of methamphetamine.

8.   Investigators were able to determine the
origin of the odor to be coming from the suspected place.

9.   For the health and safety of the community
Investigators made contact with the occupant[] of the residence and identified
[hi]m as William Loyd Maceachran W/M 09-05-1958 . . . .

10.   Investigator Sparks observed a hand pumped
sprayer located by the side of the trailer that had been altered to create an
HCL generator, commonly used in the manufacture of methamphetamine.

11.   Investigator Sparks also observed a
refrigerator next to the HCL generator that was emitting a strong odor of
ether.

12.   Investigator Sparks asked Maceachran what
the spray pump was used for?  Maceachran stated he had just found it.

13.   Maceachran stated on his own free will
that there was possibly a jar of ether located within the refrigerator. 
Maceachran could offer no reason why he was storing ether in this manner.

14.  Maceachran’s criminal history showed two
entries for Possession of Controlled Substance.

[sic] (1 C.R. 70 (bracketed alterations and
ellipsis added).)

      MacEachran concedes that the magistrate
could properly have considered that the detective smelled the strong odor of
ether from MacEachran’s trailer and MacEachran’s criminal record.[4]  See Massey, 933 S.W.2d at 148.  MacEachran
complains, however, of the affidavit’s statement that the detective “observed a
hand pumped sprayer located by the side of the trailer that had been altered to
create an HCL generator, commonly used in the manufacture of methamphetamine.” 
(Br. at 10 (quoting I C.R. 90).)  MacEachran argues, “The magistrate cannot
determine how the ‘hand pumped sprayer’ has been altered or what changes have
been made that would cause” the detective “to assert that this perfectly legal
and quite common tool had become criminal in nature.”  (Br. at 11.)    

      The affidavit states the detective’s
experience in investigating the manufacture of methamphetamine as follows:  

Your Affiant is a Peace Officer under the laws
of the state of Texas as defined by the Texas Code of Criminal Procedure
Article 2.12 (3).  In May of 1992 your Affiant received an Associated
Degree in Criminal Justice/Protective Services.  Your Affiant graduated from Western Carolina University, with a Bachelor of Science Degree in Criminal Justice in May
of 1994.  In November of 1999 your affiant successfully completed the 146th Basic Police Academy at C.O.G. (North Texas Council of Government).  Your Affiant received
a Basic Peace officers Certificate from the Texas Commission on Law Enforcement
Officer Standards and Education.  Your Affiant has been in the field of law
enforcement for over 4 years.  In July 1999 the City of Burleson employed your
Affiant as a patrol officer.  On 10/01/2002 your Affiant was assigned to the
STOP THE OFFENDER PROGRAM (S.T.O.P.) Narcotics Task Force as an investigator. 
The S.T.O.P. Narcotics Task Force is responsible for the enforcement of all
narcotics violations within the Johnson, Hood, Somervell and Erath counties. 
Your Affiant has received formal training in the field of narcotics, which
includes but is not limited to Basic Narcotics, Clan Lab School, Drug
Identification, Raid Planning, Undercover Operations, Surveillance Techniques,
Tactical Operations, Hostage Rescue, and Close Quarters Combat.  Affiant has
personally conducted or assisted other peace officers in numerous drug-related
arrests and investigations.

[sic] (1 C.R. 69); see Tex. Code Crim. Proc. Ann. art. 2.12(3)
(Vernon Supp. 2006).  In light of the detective’s training in the manufacture
of methamphetamine and of the odor of ether, a chemical precursor to the
manufacture of methamphetamine, from MacEachran’s trailer, the trial court did
not err in finding that the affidavit stated a substantial basis for
determining the existence of probable cause to search the trailer.  Therefore,
the court did not abuse its discretion in overruling the motion to suppress the
evidence of the search.  We overrule MacEachran’s issue.  

      Having overruled MacEachran’s
sole issue, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice Reyna

(Justice Vance concurs
in the judgment.)

Affirmed

Opinion delivered and
filed October 11, 2006

Do not publish

[CR25]










[1]  MacEachran’s
name is spelled variously throughout the record.  We take the spelling
“MacEachran” from his docketing statement.





[2]  “. . .
Article I § 9 of the Texas Constitution and the Fourth Amendment of the
Federal Constitution are ‘in all material aspects the same.’”  Johnson v.
State, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990) (quoting Eisenhauer v.
State, 754 S.W.2d 159[, 162] (Tex. Crim. App. 1989) [(plurality op.)]). 
“[A]rticle I, section 9 of the Texas Constitution ‘does not offer greater
protection to the individual than the Fourth Amendment.’”  Westfall v.
State, 10 S.W.3d 85, 88 (Tex. App.—Waco 1999, no pet.) (quoting Hulit v.
State, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998)); see generally 40
George E. Dix & Robert O. Dawson,
Texas Practice: Criminal Practice and Procedure § 6.11 (2d ed.
2001).





[3]  MacEachran
concedes that the affidavit states that the informant’s information was “based
on previous familiarization with the components and chemicals used to
manufacture methamphetamine.”  (Br. at 8-9 (quoting I C.R. 90).)  MacEachran
argues, “It is not clear whether such ‘familiarization’ is based upon
education, classroom experience, law enforcement training, law enforcement
experience, or simply experience with criminal activity.”  (Br. at 9.)  An affidavit need not recite the specific method of an informant’s acquaintance
with methamphetamine.  Long, 137 S.W.3d at 731.





[4]  MacEachran
contends that the ether that the officers smelled is the starter fluid that he
stole.